**METROPOLITAN WASHINGTON CO-ALITION FOR CLEAN AIR,**
Plaintiff,

v.

**DEPARTMENT OF ECONOMIC DE-VELOPMENT et al., Defendants.**

Civ. A. No. 979-73.

United States District Court,
District of Columbia.

June 21, 1973.

Bowers and Bluestein, Washington, D. C., for plaintiff.

Nathan Dodell, Asst. U. S. Atty., for defendant National Capital Planning Commission.

Charles T. Duncan, Alvin Friedman, Washington, D. C., for defendants 900 G Street Associates and Parking Management, Inc.

C. Francis Murphy, John A. Earnest, John H. Suda, Washington, D. C., for defendants Julian R. Dugas, Dept. of Economic Development and Wilburn R. Compton.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

This action arose out of an application by Defendant 900 G Street Associates to Defendant District of Columbia Department of Economic Development for a construction permit to build an eight level structure consisting of three levels of commercial space and six levels of parking space for 419 vehicles on the corner of 9th and G Streets, N. W., Washington, D. C. The case came before the Court on a Complaint for a Declaratory Judgment and Injunctive Relief under Section 1 of the Declaratory Judgment Act (28 U.S.C. §§ 2201–2202), by Plaintiff, Metropolitan Washington Coalition for Clean Air, a non-profit corporation organized under the laws of the District of Columbia, against the District of Columbia Government and Parking Management, Inc. (hereinafter PMI) and 900 G Street Associates (hereinafter Associates). Associates has applied to the District for a construction permit to construct a commercial and parking garage building at the 9th and G Streets site, which will be operated by PMI.

The present proposal to provide access to the parking garage from 9th Street represents a change from the developer's original plans to provide access along

the proposed G Street pedestrian mall. Associates' proposed development along G Street would have directly conflicted with a proposed pedestrian mall, provided for in the "Urban Renewal Plan for the Downtown Urban Renewal Area" as adopted by NCPC and approved by the District of Columbia City Council. After consideration of the objections to the 9th Street development registered by the District of Columbia Redevelopment Land Agency, Associates made a good faith effort to cooperate with the Urban Renewal Plan by changing the orientation of the proposed garage so that development would occur along G Street where garage entrances would not interfere with the pedestrianization program. Under present Zoning Regulations, Sections 5103.3, 5104.3, which allow parking garages as a matter of right in the C–3 and C–4 zoning districts, Associates could not have been prevented from building a garage at its original location, the Urban Renewal Plan notwithstanding.

In order for the parking facility to be built at the present location, Associates believed it necessary to obtain 115 feet of public alley space and, therefore, PMI made application to the City Council to close the alley. After receiving the recommendations of the D.C. Redevelopment Land Agency and the National Capital Planning Commission and after conducting a hearing at which Plaintiff appeared and registered opposition to the alley closing, the City Council closed the public alley on April 3, 1973, thus paving the way for Associates' application for a construction permit currently being reviewed by the Department of Economic Development. In its recommendation to the City Council, NCPC concluded that the closing of the alley was necessary for carrying out a program of physical improvements consistent with the pedestrianization program and the objective of expanded commercial development along G Street. The recommendation of NCPC to close the alley and the resulting application by Associates for a construction permit

have generated the issues before the Court discussed below.

## ISSUES PRESENTED

Plaintiffs have filed a complaint seeking to have the Department of Economic Development enjoined from issuing either a building permit or a preliminary excavation permit for the construction of a high-rise garage proposed by Parking Management Inc. for 9th and G Streets, N.W. until such time as the developers have applied for and received from the Department of Environmental Services a permit for the construction of a "stationary source." The Court, therefore, must determine whether such a permit is required by the Air Quality Control Regulations of the District of Columbia. Further the Court must decide whether the National Capital Planning Commission acted in contravention of the National Environmental Policy Act when it did not issue an environmental impact statement accompanying its alley closing recommendation to the City Council. Finally, the Court is asked to decide whether the action of the Office of the Surveyor in recording the closing of the aforesaid alley allegedly before the applicable statutes had been fully complied with should be declared null and void.

## CONCLUSIONS OF LAW

In order to obtain the Temporary Restraining Order or Preliminary Injunction which Plaintiff seeks, it must demonstrate each of the following conditions to the satisfaction of the Court: (1) that there is a strong probability that it will prevail on the merits of its case; (2) that there is an imminent danger of serious and irreparable harm by reason of the Defendants' actions; (3) that there is no adequate remedy at law; and (4) that no substantial harm will befall the Defendant if the Court issues the requested order, and that it will be in the general public interest for the Court to issue the order and thus immediately restrain the Defendants' actions. Virginia Petroleum Jobbers Ass'n. v.

FPC, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958).

## I. PLAINTIFF HAS FAILED TO DEMONSTRATE A STRONG PROBABILITY THAT IT WILL PREVAIL ON THE MERITS OF ITS CASE

### A. *Present D. C. Regulations do not Require Consideration of Vehicular Emissions Associated with the Operation of a Parking Garage Before a Permit to Construct May be Issued.*

█ Plaintiff contends that the District must assess all air pollutant emissions associated with the proposed parking garage in order to determine that its operation will not interfere with the attainment or maintenance of national air quality standards. While the Court agrees with Plaintiff that the D.C. regulations, particularly Section 8–720(g) require a determination by the Commissioner that the operation of the proposed garage will not prevent or interfere with the attainment or maintenance of any applicable local or national ambient air quality standard, the Court respectfully does not believe that the Commissioner must incorporate a consideration of the proposed garage's indirect effects on air quality into the generally accepted interpretation of "stationary sources," that is, "facilities that affect or may affect air quality primarily because of their own air pollutant emissions." Since automobiles are not fixtures of the proposed building, their projected emissions within the building do not appear from the District's interpretation of "stationary source" [1] to be a factor in the computation necessary to determine whether the proposed parking facility is exempt from the stationary source provisions under Section 8–2:720(j). Therefore, a permit may not be required.

█ Unquestionably the presence of the automobiles in and around the proposed facility will affect that location's air quality. But the federal Environmental Protection Agency (EPA) has not required, and the District of Columbia has not promulgated regulations providing for a stationary source review for parking garages that contemplate a determination of the impact of automobiles associated with the garage. The failure to issue such regulations, to the extent that it interfered with the attainment of national ambient air standards in the District or with the District's control strategy in its clean air implementation plan, was illegal under the Clean Air Act of 1970 (42 U.S.C. § 1857 et seq.). Natural Resources Defense Council v. EPA, 154 U.S.App.D.C. 384, 475 F.2d 968 (1973). Nonetheless, the Court is constrained to find that the District of Columbia has adopted effective regulations which exempt from review sources like the proposed garage. Administrative decisions pursuant to these regulations have the force of law, unless of course, the Commissioner abused his discretion by approving a new stationary source whose presence would prevent or interfere with the attainment of any applicable local or national ambient air standard. Meaningful changes to the District's ill-conceived procedures are imminent as the discussion below points out. Unfortunately, the new procedures will be in force too late to expand the scope of new source review in the matter before the Court.

█ In a recent notice of a proposed rule-making issued under the Clean Air Act (42 U.S.C. § 1857 et seq.), the EPA Administrator made the following comment concerning a widened scope of new stationary source review:

"Finally, the Environmental Protection Agency intends to reexamine ex-

---

1. The relevant section of the D. C. Air Quality Control Regulations is Section 8–2:702(a) which reads as follows:

   "*Permit to Construct New Source or Modify Existing Source.*

   No person shall construct a stationary source or install a control device on a stationary source constructed after the effec-

   tive date of this regulation or modify an existing stationary source, without first obtaining a permit."

   The definition of stationary source is found in Section 8–2:702 which reads as follows:

   "*Stationary Source:* Any building, structure, facility, or installation which emits or may emit air pollutants."

isting State plan provisions for the review of new 'stationary sources.' The scope of these provisions varies from State to State and region to region. As a result of this review, EPA will, if necessary, suggest or require a widening of the scope of review, i. e., that it apply to additional types; of sources in cases where present exemptions from review seem unwarranted." 38 Fed.Reg. 9599, April 18, 1973.

It is apparent that the exemptions like that in the D. C. Air Quality Regulations applying to stationary sources [2] are under federal re-evaluation and, in time, may be changed to provide for review of additional sources such as parking garages. However, in the case before the Court, Plaintiff has argued that the District's *present* procedure for reviewing new stationary sources must be construed to include all air emissions associated with the garage in order that the garage emissions be of such volume as to require a stationary source permit. The Court cannot do what Plaintiff asks. Any amendment or revocation of the District's interpretation of "stationary source" and the regulations which give force to that interpretation must result from action by EPA or the states in accordance with the strict requirements of the Clean Air Act. Natural Resources Defense Council v. EPA, *supra*. Until such time as new regulations are in force, the Court is obliged to review the Commissioner's decisions in light of the present stationary source procedures in the District of Columbia, which specifically provide for exemptions to the permit requirement.

EPA has promulgated new regulations for "complex sources," 8 Fed.Reg. 9599 (April 18, 1973), effective June 11, 1973. New source review procedures for complex sources, which will apply to parking garages, sports complexes, shopping centers and the like, will assess a source's direct and indirect effects on air quality for the purpose of determining whether there would be interference with the maintenance of any national standard.

Until such regulations are made effective in the District, a vacuum will exist for the review of new complex sources. The Court firmly believes that the task of filling such a vacuum with a measure of well-exercised discretion under the existing stationary source procedure must rest in the first instance with the District's Department of Economic Development.

B. *The National Capital Planning Commission's Recommendation to the City Council on the Closing of Part of a Public Alley at Ninth and G Streets, Northwest, Need Not Have Been Accompanied by an Environmental Impact Statement Under the National Environmental Policy Act, 42 U.S.C. § 4332(2)(C).*

■■■ The decision whether an alley is to be closed is a matter of discretion exercised by the D. C. City Council. D. C.Code 7–401. Therefore, the closing of the alley constituted local action, not federal action as required under the Act. The relevant portion of the statute, 42 U.S.C. § 4332(2)(C), provides that agencies of the Federal Government shall include a detailed environmental impact statement "in every recommendation or report on proposals for legislation and other Federal actions significantly affecting the quality of the human environment. . . ." Congress did not provide that federal agencies must prepare a NEPA statement before they make recommendations to a local body. Clearly the thrust of this provision applies to federal action, and not mere recommendations regarding action by State or local government.

Where Federal approval is a requisite for major State or local action significantly affecting the environment, the role played by the Federal agency in granting such approval may indeed constitute a substantial and major federal action within the meaning of Section

---

2. The D. C. Air Quality Regulations exempt from their control "fuel-burning equipment of 350,000 or less B.T.U. per hour capacity." Section 8–2:720(j).

102(2)(C) of NEPA. McLean Gardens Residents Association v. The National Capital Planning Commission, C.A. No. 2042–72, October 21, 1972 (D.C.Cir.). In the case before the Court, however, there is no statutory requirement for NCPC approval of an alley closing. D. C.Code 7–401 provides that the proposed closing of any street or alley shall be referred to NCPC for its recommendation only. The Decision to close the alley, according to the statute, rests with "the *judgment of said commissioners* (presently the D. C. Council.)."

C. *Plaintiff's Filing of a Formal Written Objection to the Alley Closing Did Not Require the Commissioner to Institute In Rem Proceedings in the Superior Court For the Closing of Such Alley.*

■ The pertinent statutory provisions, found in D.C.Code, Section 7–404 and 7–405,[3] require that an order closing an alley shall be issued only after a public hearing, advertisement of notice of such order, and service of a copy of such order upon each property owner abutting the affected alley. The statute further provides that if no written objec-

tion is made by any party interested within thirty days after service of the order, the order becomes effective immediately. If an objection is filed, the District is required to institute a proceeding in rem in the Superior Court of the District of Columbia for the closing of the alley, its abandonment for that purpose, and for the ascertainment of damages and the assessment of benefits resulting from such closing and abandonment.

With respect to the closing of the alley at 9th and G Streets, the Court finds that Plaintiff is not an abutting property owner; Plaintiff's members are members of the general public, and therefore *they are not parties interested* within the meaning of Section 7–404 quoted above. This being so, it was not necessary to institute a proceeding *in rem* pursuant to Section 7–405, D.C.Code, 1967 ed.

## CONCLUSION

■ For the reasons stated above, the Court has concluded that it would be improper to issue injunctive relief against the respective Defendant De-

---

3. Sections 7–404 and 7–405 read as follows: "If, after such hearing, the commissioners are of the opinion that any street, road, highway, or alley, or part thereof, should be closed, they shall prepare an order closing the same and shall cause public notice of such order to be given by advertisement for fourteen consecutive days, exclusive of Sundays and legal holidays, in at least two daily newspapers of general circulation printed and published in the District of Columbia, and shall serve a copy of such order on each property-owner abutting the street, road, highway, or alley, or part thereof, proposed to be closed by such order, and copy of such order shall be served on the owners in person or by registered mail delivered at the last known residence of such owners, or if the owner can not be located the advertisement provided for above shall be deemed sufficient legal notice; or if he be a nonresident of the District of Columbia, by sending a copy thereof by registered mail to his last known place of address: Provided, That if no objection in writing be made to the commissioners by any party interested within thirty days after the service of such order, then the said order shall immediately become effective; and the said order and plat or plats as provided for herein shall be ordered by the commissioners of the District of Columbia recorded in the office of the surveyor of the District of Columbia.

"When any such objection shall be filed with the commissioners as provided in section 7–404, then the commissioners of the District of Columbia shall institute a proceeding in rem in the Superior Court of the District of Columbia for the closing of such street, road, highway, or alley purposes, and for the ascertainment of damages and the assessment of benefits resulting from such closing or abandonment. Such proceeding shall be conducted in like manner as proceedings for the condemnation of land for streets, under the provisions of section 7–202 to 7–212, 7–214 and 7–215, and such closing and abandonment shall be effective when the damages and benefits shall have been so ascertained and the verdict confirmed. (Dec. 15, 1932, 47 Stat. 749, ch. 4, § 5; June 25, 1936, 49 Stat. 1921, ch. 804; June 25, 1948, 62 Stat. 991, ch. 646, § 32(b); May 24, 1949, 63 Stat. 107, ch. 139, § 127; July 29, 1970, Pub.L. 91–358, title I, § 155(c)(22), 84 Stat. 571.)"

partments of the District of Columbia Government in connection with the proposed commercial garage. Plaintiff has failed to state a claim for which relief can be granted. The District may proceed with its review of Associate's application for a construction permit under the relevant D.C.Code regulations. The Court does not believe it equitable to hold up action on the instant application in anticipation of a new regulatory scheme for reviewing "complex sources" such as the proposed commercial garage at issue here.

Were it not for the vacuum which now exists in the District's regulatory scheme vis a vis the District's illegal failure to provide a new source review that insured the attainment of national ambient air standards by 1975, or EPA's illegal failure to implement the appropriate procedures for the District, the result here might well have been different.