477 F.2d 402
 4 ERC 2063, 155 U.S.App.D.C. 233, 3
Envtl. L. Rep. 20,127
 The CITIZENS ASSOCIATION OF GEORGETOWN, INC., Appellant,
v.
ZONING COMMISSION OF the DISTRICT OF COLUMBIA et al.
The CITIZENS ASSOCIATION OF GEORGETOWN, INC. and the
Committee of 100 on the Federal City, Appellants,
v.
ZONING COMMISSION OF the DISTRICT OF COLUMBIA et al.
 Nos. 72-2103, 72-2174.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 11, 1973.
Decided Feb. 6, 1973.
Judgment May 8, 1973.
 
 Roberts B. Owen, Washington, D. C., with whom William D. Iverson, Washington, D. C., was on the brief, for appellant in No. 72-2103 also argued for appellant in No. 72-2174.
 Louis P. Robbins, Asst. Corporation Counsel for the District of Columbia, with whom C. Francis Murphy, Corporation Counsel, Richard W. Barton and David P. Sutton, Asst. Corporation Counsels were on the brief, for appellee, Zoning Commission of the District of Columbia.
 Joseph M. Fries, Washington, D. C., with whom Charles R. Donnenfeld, Washington, D. C., was on the brief, for appellee, Georgetown-Inland Corporation.
 Whayne S. Quin, Washington, D. C., with whom Norman M. Glasgow, John J. Carmody, Jo V. Morgan, Jr., and Charles J. Steele, Washington, D. C., were on the brief, for appellee, Maloney Concrete Co.
 Franz M. Oppenheimer and Peter S. Craig, Washington, D. C., were on the brief for appellant in No. 72-2174.
 Before BAZELON, Chief Judge, and WRIGHT and MacKINNON, Circuit Judges.
 BAZELON, Chief Judge:
 
 
 1
 This case involves the zoning of the Georgetown waterfront, an area of approximately 96 acres bordered by the Potomac River, M Street, N.W., Key Bridge and the Rock Creek Parkway. Since zoning began in the District of Columbia in 1920, this area has been zoned for commercial and industrial uses.[1] But the area seems about to undergo substantial changes and it is that possibility that brought this case before us.
 
 
 2
 * The National Capital Planning Commission (NCPC), the professional planning agency for the District of Columbia, is charged with preparing a comprehensive land-use plan for the District.[2] In 1969, the NCPC adopted a plan which, in part, called for the waterfront area to be devoted to low-density residential and parkland uses.[3] In 1971, the President called for immediate action to insure the preservation of the waterfront[4] and, in response, on January 26, 1972, the NCPC and the District of Columbia contracted with a group of private planners for a $270,000 study of the Waterfront to prepare a development program implementing the NCPC's recommendations for the area.
 
 
 3
 In the interim, however, the intervenors in this suit[5] announced plans to build major new commercial centers in the area which would be permitted by the present zoning.[6] Seeking to ward off the threat to implementation of the comprehensive plan posed by new commercial development on the waterfront, the appellants herein petitioned the Zoning Commission to adopt an interim amendment to the Zoning ordinance, preventing major construction not in conformance with the NCPC's 1969 Comprehensive Plan recommendations until the completion of the pending study. When the Zoning Commission failed to respond, the appellants brought suit for mandamus to compel action by the Commission in the District of Columbia Court of Appeals.[7] That court found that it did not have the power to provide the requested relief since the Zoning Commission's action was not reviewable as a "contested case" under the District of Columbia Administrative Procedure Act.[8] Finally, on June 29, 1972, the Zoning Commission did adopt an emergency amendment[9] to the Zoning Regulations to preserve the status quo in the waterfront area until hearings could be held on the appellants' proposal for a two-year interim amendment downzoning the area to prevent its commercial development until the ongoing study was completed.
 
 
 4
 Hearings were held in August of 1972 and testimony was given favoring adoption of the interim amendment by the NCPC, its planning consultants and several citizen groups. The Zoning Advisory Council[10] also supported the proposal. Opponents of the proposed downzoning included the intervenors, Georgetown-Inland and Maloney Concrete, as well as the Washington Metropolitan Board of Trade and a number of corporate and individual owners of property in the affected area. On October 4, the Zoning Commission revoked its emergency order and declined to adopt the proposed interim amendment.[11]
 
 
 5
 Appellants then filed suit in federal District Court challenging the Commission's order on the grounds that:
 
 
 6
 1) the Commission acted unlawfully in rejecting the recommendation of the NCPC; and
 
 
 7
 2) the Commission's action was arbitrary and unreasonable.
 
 
 8
 The District Court denied appellants' motions for a temporary restraining order on October 12, and for a preliminary injunction on October 25. On November 9, this court entered an order restraining construction of the planned new commercial centers in the Waterfront area pending the District Court's final decision.[12] On November 20, the District Court granted appellees' motion for summary judgment[13] and on November 24, this court issued an order, in effect, reinstating its restraining order of November 9. The District Court's grant of summary judgment was on the grounds that:
 
 
 9
 1) "The NCPC Comprehensive Plan is advisory only and not binding on the Zoning Commission," and that
 
 
 10
 2) there was no showing that the Zoning Commission's action was "arbitrary or unreasonable."
 
 
 11
 The instant appeal is from that decision.
 
 II
 
 12
 The Zoning Commission of the District of Columbia is entrusted with the authority to adopt and amend zoning regulations which, among other qualifications, must "be made in accordance with a comprehensive plan." 5 D.C.Code Sec. 413 (1967). The National Capital Planning Commission (NCPC) is required to "prepare, adopt and amend a comprehensive plan for the National Capital and made related recommendations to the appropriate developmental agencies [and to] serve as the central planning agency for the Federal and District Governments . . . in order to advise as to consistency with the comprehensive plan. . . ." 1 D.C.Code Sec. 1001 et seq. (1967). The NCPC is further empowered to "make a report and recommendation to the Zoning Commission of the District of Columbia on proposed amendments of the zoning regulations and maps as to the relation or conformity of such amendments with the comprehensive plan of the District of Columbia." 1 D.C.Code Sec. 1008(a) (1967).
 
 
 13
 Appellants suggest the requirement that the Commission's zoning regulations be "in accordance with a comprehensive plan" is a reference to the comprehensive plan that the NCPC is charged with preparing. But the courts of this jurisdiction have repeatedly held that term "comprehensive plan" in 5 D.C.Code Sec. 413 is not synonymous with the comprehensive plan referred to in the National Capital Planning Act of 1952, 1 D.C.Code Sec. 1001 et seq.[14] The requirement that the Zoning Commission adopt zoning regulations in accordance with a comprehensive plan rather refers to the Commission's obligation to zone on a uniform and comprehensive basis.[15] We cannot therefore accept appellants' contentions that the Zoning Commission was bound to follow the recommendation of the NCPC or that it may override that recommendation only by showing a compelling public interest in doing so.[16]
 
 III
 
 14
 In reviewing the action of the Zoning Commission, we consider only whether "in denying the application [the Commission] was arbitrary and capricious, [i. e. its decision had] no substantial relationship to the general welfare."[17] Although the Commission's actions are entitled to a presumption of validity, it must "put forward, or the court [be] otherwise able to discern, some basis in fact and law to justify the action as consistent with reasonableness."[18] The Commission's challenged decision offered no reasons.[19] The court in a case as complex as the one before us is hesitant to extrapolate the required basis from the record before the Commission without the benefit of the Commission's expertise and guidance. We therefore order the Zoning Commission to file a statement of the reasons for its decision within 45 days. We neither express nor intimate any position on the merits by this holding.
 
 
 15
 Two strands of doctrine apply to our review of administrative agency decisions. The first is the presumption of validity of an agency's actions. An agency such as the Zoning Commission is expected to apply its expertise in making decisions like the one before us and courts should not attempt to substitute their judgment for that of the agency to whose discretion those decisions have been committed by Congress.[20] Second, respect for an agency's expertise does not eliminate the need for judicial review of agency actions, and inherent in that albeit limited power of review is the need for an agency to spell out its reasoning.[21] As Justice Harlan said in the Permian Basin Area Rate Cases, 390 U.S. 747, 792, 88 S.Ct. 1344, 1373, 20 L.Ed.2d 312 (1968):
 
 
 16
 The court's responsibility is not to supplant the Commission's balance of . . . [competing] interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors. Judicial review of the Commission's orders will therefore function accurately and efficaciously only if the Commission indicates fully and carefully the . . . purposes for which, it has chosen to act.
 
 
 17
 The case for requiring a statement of reasons from an administrative agency is a persuasive one. Those reasons may be crucial in order for the court to know what the agency has really determined, hence what to review. Courts ought not to have to speculate as to the basis for an administrative agency's conclusions;[22] nor can a court "assume without explanation that proper standards are implicit in every act of agency discretion."[23] And, when faced with a complex problem, having widespread ramifications, like that before us today, a court should surely have the benefit of the agency's expertise.[24] Finally, the articulation of reasons by an agency-for itself and for the public-does afford a safeguard against arbitrary and careless action and is apt to result in greater consistency in an agency's decisionmaking.[25]
 
 
 18
 It is true that the Zoning Commission is a quasi-legislative body and is not required to support its legislative-type judgments with findings of fact.[26] But, as the District of Columbia Court of Appeals has noted, there are important elements of a non-legislative nature to the Commission's decisions.[27] And there are important distinctions between our review of the Zoning Commission and our review of the acts of a legislature.[28] Thus, while the legislative character of the Commission's decision may take it outside the strict application of Chenery,[29] the Commission may still be required to state reasons for its decisions.[30] Reasons differ from findings in that reasons relate to law, policy, and discretion rather than to facts[31] and even where findings are not required, a disclosure of an agency's reasons is often desirable.[32]
 
 
 19
 Not only are the arguments for a general requirement of reasons clearly applicable to the actions of the Zoning Commission but the facts of this case make all the more compelling the need for an articulation of reasons by that agency. The District of Columbia Administrative Procedure Act (DC-APA)[33] expressly imposes such a requirement in "contested cases". That, of course, does not bar imposing a requirement of stated reasons in the present context. On the contrary, the legislative history of the DC-APA indicates Congress assumed that we would construct such a requirement or believed that the courts already had. That act was meant only to prescribe minimum procedures.[34] Before the DC-APA was passed, the District Court in Donovan v. Clark[35] held that even though the Zoning Commission's decisions are legislative in character, the court's limited power of review could only be properly exercised when that agency set forth the reasons for its decision. In the Committee reports on the DC-APA, the following observation was made in regard to that holding:
 
 
 20
 The Donovan decision reaffirmed and applied an elemental principal of fair administrative procedure so far as appeals from the decisions of the Zoning Commission . . . are concerned.[36]
 
 
 21
 Second, if the recommendation of the NCPC, the District's professional planning agency, had been adopted here, we would, of course, have that agency's report to provide us both with some explanation of the Commission's action and the benefit of the expertise that we now seek from the Commission. But, in this case, the Commission rejected the NCPC's recommendations, clearly distinguishing it from Gerstenfeld v. Jett.[37]
 
 
 22
 Finally, we must realize that lurking in the shadows of this case is an issue not raised by the parties but, in a different form, before this court in another case.[38] That case involves the question of whether a recommendation of the NCPC, a federal agency, to the local Zoning Commission must be accompanied by an environmental impact statement. That issue is not before the court today, but it is appropriate to take note of the strong and pervasive congressional interest in environmental protection. As the National Capital Planning Commission has noted:
 
 
 23
 In view of the unique federal presence at the seat of government, a special effort should be made by the Federal and District of Columbia Governments in the National Capital Region to implement the National Environmental Policy Act of 1969. . . . Such a special and continuing effort in this region could well serve as a demonstration for the entire Nation.
 
 
 24
 ******
 
 
 25
 * * *
 
 
 26
 Although the declaration of a national environmental policy in Section 101 of the National Environmental Policy Act of 1969 would appear to include actions by the District of Columbia Government, the provisions of sections 102 and 103 which are directed to all agencies of the Federal Government [and require the preparation of environmental impact statements], do not apparently apply to actions of the District of Columbia Government unless federal financial assistance is involved in individual District projects. The various activities of the various District agencies and departments do, in fact, affect the quality of the environment in both the District of Columbia and the National Capital Region as a whole and should, therefore, also meet the objectives and policies of the . . . Act.[39] (emphasis added)
 
 
 27
 Where, as here, the potential environmental effects of the Commission's decision are substantial, it must at least consider the environmental issue to fulfill its public interest mandate. The judgment as to environmental impact is a determination of policy committed to the discretion of the Commission alone; and where the Commission has struck a balance between environmental and other factors, we will not reverse its decision simply because we would have attached different weights to the competing interests at stake.[40] Without a statement of reasons, however, we cannot know whether or not that assessment has, in fact, been made.
 
 
 28
 The Zoning Commission, without undue delay and within 45 days of this judgment, shall provide to the public and to the court a statement of the reasons for its challenged decision. The injunctive relief ordered by this court on November 24, 1972, will remain in effect pending a decision on the merits.
 
 
 29
 It is so ordered.
 
 MacKINNON, Circuit Judge (concurring):
 
 30
 To my mind, the strongest ground for requiring the statement of reasons is that it is impossible to determine from the order of the Zoning Commission whether it denied the motion for interim zoning after full consideration of the merits of that request, or because it concluded it was beyond the legal authority of the Commission to freeze construction in the manner requested, or for other reasons.
 
 JUDGMENT
 
 31
 PER CURIAM.
 
 
 32
 The background of these appeals is outlined in our opinion herein dated February 6, 1973. At that time we stated:
 
 
 33
 "In reviewing the action of the Zoning Commission, we consider only whether 'in denying the application [the Commission] was arbitrary and capricious, [i. e. its decision had] no substantial relationship to the general welfare.' * * *"
 
 
 34
 (At 407.) At that time also, we remanded the cases to the Zoning Commission for "a statement of the reasons for its challenged decision." (At 407.) These reasons are now before us, and we cannot say that the Commission acted arbitrarily and capriciously in arriving at its decision.
 
 
 35
 Under the circumstances, it is ordered and adjudged by this court that the judgment of the District Court appealed from in these causes is hereby affirmed.
 
 
 
 [1]
 Presently the Georgetown waterfront area is zoned CM-2 (heavy commercial and light manufacturing, District of Columbia Zoning Regulations Sec. 6101.1) and M (general industry, District of Columbia Zoning Regulations Sec. 6102.1)
 
 
 [2]
 1 D.C.Code Secs. 1001-1013 (1967); see part II of this opinion, infra
 
 
 [3]
 National Capital Planning Commission, Elements of a Comprehensive Plan for the National Capital Adopted by the Commission Through September 30, 1969
 
 
 [4]
 Address of President Richard Nixon, April 7, 1971
 
 
 [5]
 Maloney Concrete Company announced plans for its Dodge Center development in September of 1971 and Georgetown-Inland Corporation announced its plans to build a similar project in March of 1972
 
 
 [6]
 On March 26, 1971, appellant, Citizens Association of Georgetown, filed a petition with the Zoning Commission for "downzoning" of the waterfront. The petition was denied without a hearing on October 28, 1971. That decision has not been challenged
 
 
 [7]
 Citizens Ass'n of Georgetown v. Washington, 291 A.2d 699 (D.C.App.1972). Subsequently, a similar suit for mandamus was brought in the federal district court but was dismissed as moot after the Commission acted on June 29
 
 
 [8]
 1 D.C.Code Sec. 1510 (providing for review of "contested cases") and Sec. 1502(8) (Supp. V 1972) (defining "contested cases"); see Capitol Hill Restoration Society v. Zoning Commission, 287 A.2d 101 (D.C.App.1972)
 
 
 [9]
 District of Columbia Zoning Commission, Order No. 48 (June 29, 1972). This amendment downzoned the area to an R-4 classification (residential-row dwelling, District of Columbia Zoning Regulations Sec. 3104.1), under which the intervenors' projects would not be permitted. See note 5, supra. Such emergency action is authorized by 1 D.C.Code Sec. 1505(c) (Supp. V 1972); see Salyer v. McLaughlin, 100 U.S.App.D.C. 29, 31, 240 F.2d 891, 893 (1957); Citizens Ass'n of Georgetown v. Washington, 291 A.2d 699, 702 (D.C.App. 1972)
 
 
 [10]
 The Zoning Advisory Council, which is charged with reporting on all proposed zoning amendments is made up of representatives of the NCPC, Zoning Commission, and the Commissioners of the District of Columbia (now the D.C. Council), all of whom must be "experienced in zoning practice." 5 D.C.Code Sec. 417 (1967)
 
 
 [11]
 District of Columbia Zoning Commission, Order No. 51 (October 4, 1972)
 
 
 [12]
 Citizens Ass'n of Georgetown v. Zoning Commission No. 72-2103, D.C.Cir. (Order of Nov. 9, 1972)
 
 
 [13]
 Citizens Ass'n of Georgetown v. Zoning Commission, C.A. 2034-72 (D.D.C. November 20, 1972)
 
 
 [14]
 Diedrich v. Zoning Commission, 129 U.S.App.D.C. 265, 393 F.2d 666 (1968); Lewis v. District of Columbia, 89 U.S. App.D.C. 72, 74, 190 F.2d 25, 27 (1951); Capital Properties, Inc. v. Zoning Commission, 229 F.Supp. 255, 258 (D.D.C. 1964)
 
 
 [15]
 3 Anderson, American Law of Zoning, Sec. 17.15 at 310 (1968); D. Hagman, Urban Planning and Land Development Control Law, Sec. 23 at 53-54 (1971); 2 Yokley, Zoning Law and Practice (3d ed.) Sec. 11-3(d) (1965)
 
 
 [16]
 The legislative history of the relevant statutes clearly supports our construction. By the time the predecessor of the NCPC was created, in 1926, the District of Columbia Zoning Commission was already in existence. The House report on the bill establishing the new planning agency indicates that the committee heard testimony suggesting that the local zoning commission be bound by the planning agency's comprehensive plan. The committee rejected that suggestion but reported out a bill requiring members of the zoning commission to "adhere in principle" to the plan. H.Rep.No.204, 69th Cong., 1st Sess. (1926). The Senate struck that language with a clearly expressed intent to make the plan purely advisory to the zoning commission. S. Rep.No.364, 69th Cong., 1st Sess. (1926). The House ultimately agreed. Conference Report, H.Rep.No.964, 69th Cong., 1st Sess. (1926)
 There is no indication in the legislative history of the 1938 Zoning Act, Act of June 20, 1938, 52 Stat. 797, that Congress had any intention of reversing itself in regard to the relationship between the Zoning Commission and the planning agency. See sources at note 14, supra. And, it seems clear that Congress did not mean to disturb the relationship between the two agencies, in regard to local zoning in general, in passing the 1952 National Capital Planning Act. H.Rep. No.2164, 82d Cong., 2d Sess. (1952).
 
 
 [17]
 Shenk v. Zoning Commission, 142 U.S. App.D.C. 267, 440 F.2d 295 (1971) and sources collected at 142 U.S.App. at 269, 440 F.2d at 297
 
 
 [18]
 Shenk v. Zoning Commission, 142 U.S. App. at 269-270, 440 F.2d at 297-298
 
 
 [19]
 The entirety of the Commission's order is set out below:
 The Zoning Commission of the District of Columbia, having met in executive session, hereby ORDERS that:
 
 
 [1]
 Emergency Order No. 48, effective June 29, 1972, relating to the Georgetown Waterfront Area, is hereby terminated
 
 
 [2]
 After public notice and hearing of Z. C. Case No. 72-5, proposals for interim zoning of the Georgetown Waterfront Area, the Commission determines that it will not adopt either proposal
 District of Columbia Zoning Commission, Order No. 51 (dated Sept. 28, 1972, issued Oct. 4, 1972).
 
 
 [20]
 See Braniff Airways, Inc. v. CAB, 126 U.S.App.D.C. 399, 406, 379 F.2d 453, 460 (1967). But cf. Environmental Defense Fund v. Ruckelshaus, 142 U.S.App.D.C. 74, 87-88, 439 F.2d 584, 597-598 (1971)
 
 
 [21]
 See Airline Pilots Assoc., Int'l. v. CAB, 154 U.S.App.D.C. -, at -, 475 F.2d 900, at 906 (1973); Greater Boston Television Corp. v. FCC, 143 U.S.App. D.C. 383, 393, 444 F.2d 841, 851 (1971); WAIT Radio v. FCC, 135 U.S.App.D.C. 317, 320, 418 F.2d 1153, 1156 (1969)
 
 
 [22]
 See, e. g., Great Lakes Screw Corp. v. NLRB, 409 F.2d 375, 379 (7th Cir. 1969); Austin v. Jackson, 353 F.2d 910, 911 (4th Cir. 1965); Northeast Airlines, Inc. v. CAB, 331 F.2d 579, 586 (1st Cir. 1964)
 
 
 [23]
 Environmental Defense Fund v. Ruckelshaus, 142 U.S.App.D.C. 74, 84, 439 F.2d 584, 598 (1971)
 
 
 [24]
 Brawner Bldg., Inc. v. Shehyn, 143 U.S. App.D.C. 125, 136, 442 F.2d 847, 858 (1971); F. W. Means & Co. v. NLRB, 377 F.2d 683, 687-688 (7th Cir. 1967)
 
 
 [25]
 Environmental Defense Fund v. Ruckelshaus, 142 U.S.App.D.C. 74, 84, 439 F.2d 584, 598 (1971)
 
 
 [26]
 Shenk v. Zoning Commission, 142 U.S. App.D.C. 267, 269, 440 F.2d 295, 297 (1971)
 
 
 [27]
 See Capitol Hill Restoration Society v. Zoning Commission, 287 A.2d 101 (D.C. App.1972) (even though the Zoning Commission is a quasi-legislative body, its actions may be subject to the "contested case" provisions of the D.C. Administrative Procedure Act). It is also interesting to note that the Model State Administrative Procedure Act, on which the DCAPA is based, does aver to the need for a statement of reasons in rule-making. Uniform Law Commissioners' Revised Model State Administrative Procedure Act Sec. 3 in 1961 Handbook of the National Conference of Commissioners on Uniform State Laws at 210
 
 
 [28]
 Unlike a legislature, the Zoning Commission is not directly responsible to the voters. In the District of Columbia the electoral responsibility of the Zoning Commission is particularly attenuated, since the Zoning Commission is made up entirely of Presidential appointees, responsible to the executive branch of the federal government and not to the people of the District of Columbia, whose lives are so vitally affected by their decisions. Accordingly, we cannot realistically expect the political process to act as a check on the Commission's actions
 Also, in contrast to Congressional acts, there is no legislative history from which we could discern the purpose for the Commission's actions. In certain circumstances an NCPC report might serve a function roughly analogous to that of a legislative committee report, but, since the Commission rejected the NCPC's recommendation in this instance, we do not even have the benefit of that guidance.
 
 
 [29]
 SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943); cf. ChaeSik Lee v. Kennedy, 111 U.S.App.D.C. 35, 38, 294 F.2d 231, 234 (1961)
 
 
 [30]
 Today's decision, requiring a statement of reasons in the zoning context, is not a novel one. In Brawner Bldg., Inc. v. Shehyn, 143 U.S.App.D.C. 125, 136, 442 F.2d 847, 858 (1971), we said, in reviewing an exercise of power delegated to the Board of Zoning Adjustment by the Zoning Commission, that our "determination of the merits should await the guidance of the Board's expertise and reasoning." See also, cases collected at 2 Yokley, Zoning Law and Practice (3d ed.) Sec. 15.17 (1965)
 
 
 [31]
 See, e. g., K. Davis, Administrative Law Treatise Sec. 16.12 at 476 (1953)
 
 
 [32]
 See e. g., Saporiti v. Zoning Board, 137 Conn. 478, 482, 78 A.2d 741, 743 (1951): cf. K. Davis, Administrative Law Treatise Sec. 16.00 (Supp.1970) (the requirement of reasons should not be limited to formal proceedings; it should extend to all determinations, unless the inconvenience is likely to outweigh the probable benefits)
 
 
 [33]
 Citizens Ass'n of Georgetown v. Washington, 291 A.2d 699 (D.C.App.1972), construing 1 D.C.Code Sec. 1501 et seq. (Supp. V 1972)
 
 
 [34]
 S.Rep. No. 1581, 90th Cong., 2d Sess. (1968) at 9
 
 
 [35]
 222 F.Supp. 632 (D.D.C.1963)
 
 
 [36]
 S.Rep. No. 1581, 90th Cong., 2d Sess. (1968) at 5; accord, H.R.Rep. No. 202, 90th Cong., 1st Sess. (1967) at 3
 
 
 [37]
 126 U.S.App.D.C. 119, 374 F.2d 333 (1967)
 
 
 [38]
 McLean Gardens Residents Ass'n v. National Capital Planning Commission, No. 72-2000 (D.C.Cir. filed Oct. 21, 1972)
 
 
 [39]
 National Capital Planning Commission, Guidelines for the Protection and Enhancement of Environmental Quality in the National Capital Region, Aug. 6, 1972, 1 ELR 46034
 
 
 [40]
 Chae-Sik Lee v. Kennedy, 111 U.S.App. D.C. 35, 38, 294 F.2d 231, 234 (1961)