**DISTRICT OF COLUMBIA HOSPITAL ASSOCIATION, et al., Appellants,**

v.

**Marion S. BARRY, Jr., Mayor of the District of Columbia, et al., Appellees.**

No. 86–179.

District of Columbia Court of Appeals.

Argued Jan. 4, 1990.
Decided Jan. 30, 1991.
As Amended April 12, 1991.

James C. Pyles, with whom Barbara E. Straub was on the brief, Washington, D.C., for appellants. Denise C. Andresen, Washington, D.C., also entered an appearance, for appellants.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, with whom Herbert O. Reid, Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, Washington, D.C., for appellees.

Before NEWMAN and TERRY, Associate Judges, and PRYOR, Senior Judge.

TERRY, Associate Judge:

In this case the District of Columbia Hospital Association (DCHA) and the thirteen hospitals it represents challenge three regulations promulgated by the District of Columbia State Health Planning and Development Agency (SHPDA). These regulations were part of a scheme designed to implement a District of Columbia statute, the Certificate of Need Act of 1980.[1] Briefly stated, they permit the SHPDA to impose conditions on the use of medical equipment and services, to require medical institutions to report expenditures over specified amounts, and to prohibit expenditures "related to" medical services unless a Certificate of Need (CON) has been obtained. The present appeal is taken from a trial court judgment upholding the validity of the three regulations at issue. DCHA argues on appeal that the scope of these regulations exceeds the authority granted by the Certificate of Need Act, and that they are arbitrary and capricious. We disagree and affirm the judgment.[2]

---

1. D.C.Law No. 3-99, 27 D.C.Reg. 3599 (1980) (codified as amended at D.C.Code §§ 32-301 *et seq.* (1988)). Our citations to the Act throughout this opinion will be to the relevant sections of the Code.

2. This appeal was originally consolidated with two other appeals by other parties in the same case from the trial court's judgment. Those two appeals, Nos. 86-166 and 86-168, which raised other issues, have been made moot by an intervening amendment to the statute and the is-

## I

The District of Columbia Council enacted the Certificate of Need Act ("the CON Act") in 1980 to ensure that health care facilities in the District qualified for federal health care planning grants and other funds under the National Health Planning and Resources Development Act,[3] and "to promote effective and equitable health planning and regulation of new institutional health services and capital expenditures proposed for the District of Columbia."[4] To achieve these goals, the CON Act required all persons or organizations proposing new medical services or major medical capital expenditures to obtain a CON from the SHPDA before the service could be offered or the expenditure made.[5]

In 1982 the SHPDA promulgated regulations to implement the CON Act. These regulations, which also establish requirements for obtaining a CON, contain more than 400 provisions and affect virtually every aspect of health care service in the District of Columbia.[6] Three regulations are challenged by DCHA: 22 DCMR § 4102 (1986), which requires health facilities to obtain a CON whenever capital expenditures "related to" health services or facilities rise above specified limits; 22 DCMR § 4005 (1986), which authorizes the SHPDA to attach enforceable conditions to CONs to ensure that authorized health services, facilities, and equipment will be used for the purposes for which they were originally intended; and 22 DCMR § 4030 (1986), which requires health facilities to notify the SHPDA of capital expenditures greater than $100,000.

### A.  The "Capital Expenditures" Regulation

This regulation requires District of Columbia health facilities to obtain a CON whenever capital expenditures "related to" health services or facilities exceed certain limits.[7] In the CON Act, "capital expenditure" is defined as "[a]ny expenditure *by*

suance of additional regulations. We have therefore entered a separate order today dismissing Nos. 86–166 and 86–168 as moot.

An earlier, interlocutory appeal in this case is reported at *District of Columbia Hospital Ass'n v. Barry*, 498 A.2d 216 (D.C.1985).

3.  Pub.L. No. 93–641, 88 Stat. 2225 (1975) (codified as amended at 42 U.S.C. § 300k *et seq.* (1982)). Although the federal law which authorized health care planning grants was repealed in 1986, Pub.L. No. 99–660, § 701, 100 Stat. 3743, 3799 (1986), the District of Columbia CON Act remains in force as an independent statute.

4.  D.C.Code § 32–301 (1988) (statement of legislative purpose).

5.  D.C.Code § 32–303(a)(1) (1988) provides:

All persons proposing to offer or develop a new institutional health service or to obligate a capital expenditure in the District shall, prior to proceeding with that offering, development or obligation, obtain from the SHPDA a certificate of need indicating that there exists a public need for such new service or expenditure. Only those institutional health services or capital expenditures which are granted a certificate of need shall be offered or developed or obligated within the District.

6.  In 1986 the regulations were renumbered and recodified in Title 22 of the District of Columbia Municipal Regulations (DCMR). Our citations to the regulations in this opinion will be to the current (1986) version.

7.  22 DCMR § 4102 (1986) provides:

4102.1.  Unless a Certificate of Need has been obtained, no person shall make or obligate either of the following capital expenditures related to a health service or facility:
(a) A capital expenditure of six hundred thousand dollars ($600,000) or more;  or
(b) A capital expenditure for major medical equipment of four hundred thousand dollars ($400,000) or more.

4102.2.  The amount of capital expenditure under § 4102.1 shall include the cost of any studies, surveys, designs, plans, working drawings, specifications, or other services (including staff effort) associated with the capital expenditure.

4102.3.  Any capital expenditure by an existing health facility or service made for any purpose whatsoever (including expenditure for parking lots, office buildings, or other facilities or services) shall be deemed to be "related" to a health facility or service.

4102.4.  Capital expenditures by non-health facility components of a larger institution that also includes a hospital or other health facility or service (such as those made by a university or medical school that operates a hospital) are not considered to be related to a health service or facility unless either of the following applies:
(a) Any part of the capital expenditure is made by or represents an obligation of the health facility or service component;  or
(b) The expenditure actually or potentially directly affects patient charges or the cost of providing care.

*or on behalf of* a health care facility...." D.C.Code § 32–302(3)(A) (1988) (emphasis added). The regulation, however, states in relevant part: "Unless a Certificate of Need has been obtained, no person shall make or obligate [a capital expenditure] ... *related to* a health service or facility." 22 DCMR § 4102.1 (1986) (emphasis added). The issue before the trial court was whether the SHPDA exceeded the scope of its authority by issuing a regulation addressing an expenditure "related to a health service or facility" when the statutory language provided for "an expenditure by or on behalf of a health care facility."

The trial court ruled that the SHPDA did not exceed the scope of its authority, stating that the "linguistic change" embodied in the regulation "does not expand the definition of capital expenditure, but is addressed to CON requirements. Thus, it does not expand SHPDA's review authority." Furthermore, the court concluded that the regulation was not arbitrary and capricious because the SHPDA had "supported this change [in language] with a rational basis."

### B. *The "Perpetual Conditions" Regulation*

Another regulation authorizes the SHPDA to attach enforceable conditions to CONs to ensure that authorized health services, facilities, and equipment will be used for the purposes for which they were originally intended.[8] Such conditions, moreover, may be permanent or of any duration, in the discretion of the SHPDA, even though the CON Act provides that a CON is not valid for more than one year (although it may be renewed). *See* D.C.Code § 32–307(a) (1988). The trial court concluded that this regulation was authorized by the CON Act because applicable federal regulations permit a state agency to impose conditions upon CONs and because D.C.Code § 32–305(a) "refers directly to these federal regulations" and authorizes the SHPDA to require, at a minimum, that these federal standards be met. The court also held that the regulation was authorized by D.C.Code § 32–316 (1988), which permits the SHPDA to adopt "any other regulation necessary to carry out the purposes of [the CON Act]."

The trial court ruled, in addition, that the regulation was not arbitrary because SHPDA based it on federal findings and its own research. The court concluded that the regulation followed federal requirements and refused to "substitute its judgment for an agency's rational choice."

---

**8.** 22 DCMR § 4005 (1986) provides:

4005.1. The SHPDA may attach conditions to the approval of a Certificate of Need as long as the conditions relate directly to any adopted SHPDA review criteria.

4005.2. The expiration date, if any, of each condition shall be specified in the Certificate of Need.

4005.3. If so specified, conditions shall continue to be valid after a project is completed or after a Certificate of Need is terminated.

4005.4. In any case where the SHPDA finds that an approved project does not satisfy SHPDA's access criteria based on the considerations in §§ 127.1(e), (f), and (g), it may, if it approves the application, impose the condition that the applicant take affirmative steps to meet those criteria.

4005.5. If the SHPDA finds a condition on which a Certificate of Need was issued has been violated, it may withdraw the Certificate of Need through use of the procedure for noncompliance with the Certificate of Need Act and regulations, as specified in § 4020.

4005.6. In the case of an application approved for a Certificate of Need with conditions, the SHPDA may (if no licensing or operating approval is required by any other District agency) grant the Certificate holder the authority to begin "provisional operations" while the Certificate of Need holder demonstrates its compliance with the conditions attached to the Certificate of Need.

4005.7. If the SHPDA determines that conditions have been violated and the applicant is not permitted to begin full operation, the applicant may appeal in the same manner as with any decision to issue or not issue a Certificate of Need.

4005.8. The completed application for a Certificate of Need and related documentation shall be considered to be part of any Certificate of Need issued after review of the application.

4005.9. The holder of a Certificate of Need shall proceed only in conformance with the Certificate of Need and the related application and documentation except insofar as the SHPDA has approved modifications in accordance with § 4006.

## C. The "Threshold Expenditures" Regulation

The third regulation challenged by the DCHA requires health facilities to notify the SHPDA of (1) any capital expenditure of $100,000 or more for any construction activity which requires a permit from the District of Columbia government, and (2) any expenditure of $100,000 or more to acquire major medical equipment. Such notice must provide a full description of the equipment, including its price or fair market value, and must also describe any related expenditures which the facility may be considering within the next two years. Health facilities may not go ahead with any such capital expenditures or purchases without filing the required notice at least thirty days before the expenditure or purchase is made.[9]

The issue before the trial court was whether this notification requirement exceeded the authority conferred by the CON Act, which provides that a CON is not required for capital expenditures of $600,000 or less,[10] or for capital expenditures for major medical equipment valued at $400,000 or less,[11] with certain specified exceptions. The court held that the notice requirement was authorized by D.C.Code § 32–304(a) (1988), which directs the SHPDA to adopt regulations "which at a minimum meet the requirements of [the federal statute] and any federal regulations issued under [that statute]," as well as D.C.Code § 32–316 (1988), the catchall

provision authorizing the SHPDA to adopt "any other regulation necessary to carry out the purposes of [the CON Act]." Accordingly, the court rejected DCHA's claim that the regulation was arbitrary and capricious.

## II

### A. The "Capital Expenditures" Regulation

■ This regulation—22 DCMR § 4102, *supra* note 7—prohibits any capital expenditure "related to" health services or facilities above a specified limit unless a CON has been obtained. The issue we must decide is whether the term used in the regulation—"related to"—has impermissibly broadened the term used in the CON Act—"by or on behalf of". DCHA argues that the phrase "related to" conflicts with the plain language of the statute, exceeds the agency's statutory authority, is unrelated to the purpose of the CON Act, and is arbitrary and capricious. DCHA's contentions are not persuasive. We hold, relying in part on the SHPDA's own reading of its regulation, that "related to" in the regulation is no broader in its meaning than "by or on behalf of" in the statute.

DCHA relies almost exclusively on the assertion that "by or on behalf of" implies an agency relationship, so that the CON Act was intended to reach only expenditures made either by the health facility itself or by its agents. We cannot accept

---

**9.** 22 DCMR § 4030 (1986) provides in pertinent part:

> 4030.1. Any health care facility (except one covered by the HMO exemption described in [section 4115]) that intends to obligate an expenditure of one hundred thousand dollars ($100,000) or more for construction, repairs, or renovation of facilities, when that action requires issuance of any type of permit from the D.C. Government, shall notify the SHPDA of that intention, notwithstanding that the capital expenditure intended is less than the Certificate of Need review threshold.
>
>      *    *    *    *    *    *
>
> 4030.4. Notification shall be filed with the SHPDA at least thirty (30) days prior to the actual undertaking of the construction, repairs, or renovation in question.
>
> 4030.5. Any health care facility (except one covered by the HMO exemption described

in chapter 41) that intends to obligate an expenditure of one hundred thousand dollars ($100,000) or more, or to acquire by lease, donation, or other transfer data processing, diagnostic, or medical treatment equipment (including the replacement of parts of existing equipment that enhance the original capabilities of the equipment), whether a single unit or system with related functions, the fair market value of which is greater than one hundred thousand dollars ($100,000) but less than four hundred thousand dollars ($400,000), shall notify the SHPDA of that intention at least thirty (30) days prior to the acquisition of the equipment.

**10.** D.C.Code § 32–302(3)(A)(iv) (1988).

**11.** D.C.Code § 32–302(11)(A) (1988).

such a crabbed interpretation. The plain meaning of "on behalf of," as a matter of simple English, clearly goes beyond an agency relationship. An expenditure made by an independent party for the benefit of a health facility—in the form of a charitable contribution, for instance—would surely be included within the phrase "on behalf of." The critical factor in deciding whether a CON is required is the nature of the connection between the health facility and the capital expenditure, not the identity or ownership of the bank account from which the expenditure is made.

DCHA suggests that "the independent entrepreneur who builds a parking lot adjacent to a hospital may be subject to a CON review under the regulations ... whereas the parking lot project would not be subject to CON review under the statute." Using this example, DCHA asserts that the parking lot would be a "related to" expenditure, and therefore "subject to a CON review." This assertion ignores the fact that in the example there is no nexus between the hospital and the parking lot other than their geographic proximity, which would benefit both the entrepreneur and the hospital, its staff, and its patients. Such a benefit, in our view, would not be sufficient to require a CON review under the "related to" regulation. We think it farfetched to suggest that a CON would be necessary for *any* major expenditure, by anyone, simply because the expenditure might have some favorable impact on a health facility. Rather, we read the regulation as requiring a CON only when the health facility (or someone on its behalf, such as a charitable contributor) actually makes the expenditure, in whole or in part, or when there is some actual link between the health facility and the expenditure, such as a construction loan, a gift of land, or a promise to underwrite costs.

Our analysis is supported by the SHPDA's "Basis and Purpose Statement," which is included in the record on appeal.[12] The statement says in part:

First, the preamble to the federal regulations makes it clear that the term "by or on behalf of" used in the regulations at 42 C.F.R. § 123.404(a)(1) covers related expenses. In that preamble, the Secretary of the U.S. Department of Health and Human Services explained that "the term 'by or on behalf of' includes capital expenditures made *by the facility itself,* as well as capital expenditures made *by other persons which assist the facility* in offering services to its patients".... Second, the construction of office buildings, parking lots, and other related services can have a direct bearing on costs, competition, and the like. Under 42 U.S.C. § 300n–1(c), 42 C.F.R. § 123.412(a), the SHPDA is required to take these factors into consideration in overseeing the health planning needs of the District. Third, one purpose of the CON law is to contain rising patient care costs. Thus, it is necessary for the SHPDA to *review expenditures which potentially directly affect patient costs,* since, once the expenditure is made, the cost is passed on to the consumer. [Emphasis in original.]

While this passage shows that the SHPDA was aware of the impact on medical facilities of non-medical construction and services, nowhere does it state that the regulation applies to expenditures that do not have a meaningful link to a health facility or service. The observation that "once the expenditure is made, the cost is passed on to the consumer" surely means that only when the health facility itself[13] makes the expenditure is the CON process triggered. Obviously, if the expenditure is incurred by someone else, the health facility cannot

---

12. At an earlier stage of these proceedings, the trial court ordered the SHPDA to prepare and file such a "Basis and Purpose Statement." Although that order was reversed in the prior appeal, *District of Columbia Hospital Ass'n v. Barry, supra* note 2, the SHPDA apparently prepared the statement while the appeal was pending. The District later filed it as an exhibit in support of its motion for partial summary judg-

ment, the granting of which has led to the present appeal.

13. Or some larger entity of which the health facility is a part, such as a university making an expenditure for the benefit of its medical school.

pass the cost on to the consumer because it has no cost to pass on. Thus the entrepreneur who builds a parking lot with no assistance from the medical facility has no reason to expect that the CON procedure applies to that project.

Given our holding that "related to" in the regulation and "by or on behalf of" in the statute do not have different meanings, there is no rational basis for questioning the reasonableness of the regulation. The trial court ruled that the "linguistic change" made by the regulation "does not expand the definition of capital expenditure [and therefore] does not expand SHPDA's review authority." We agree that the language used in the regulation does not give rise to the parade of horribles suggested by DCHA. It follows that the regulation does not exceed the authority granted to the SHPDA by the CON Act, and that it is therefore not arbitrary or capricious.

### B. *The "Perpetual Conditions" Regulation*

■ The "perpetual conditions" regulation—22 DCMR § 4005, *supra* note 8—authorizes the SHPDA to attach conditions to a CON that extend beyond the period for which the CON itself is valid.[14] Thus, for example, if a certificate is issued for the building of a medical facility, section 4005.3 permits the SHPDA, in its discretion, to require that the facility continue indefinitely to be used for the purpose for which it was built, even after the project necessitating the CON is completed and the CON itself expires.[15] DCHA argues that this provision exceeds the SHPDA's authority under the CON Act and is therefore arbitrary and capricious. Specifically, DCHA

maintains that the plain language of the statute does not authorize perpetual conditions, that the legislative history of the statute shows that the Council did not intend to give the SHPDA the authority to impose perpetual conditions, and that this provision violates the fundamental purposes of the CON Act. These contentions are without merit.

DCHA's assertion that the plain language of the CON Act does not authorize perpetual conditions ignores the purpose of the Act, namely, "to promote effective and equitable health *planning* and *regulation* of new institutional health services and capital expenditures proposed for the District of Columbia." D.C.Code § 32–301(1988) (emphasis added). That the word "regulation," as used in this sentence, applies to more than just the granting of a CON is illustrated by a later provision in the Act, which provides in part: "Any person proposing to permanently close a HCF [health care facility], health service, or HMO [health maintenance organization] shall notify the SHPDA of this intention no later than 90 days prior to the proposed closing, and shall provide the SHPDA such information as the SHPDA shall require by regulation." D.C.Code § 32–303(f) (1988). This language makes clear that the Act does indeed envision and provide for continuing supervision of health services after the expiration of a CON.

The purpose of the CON durational requirement, D.C.Code § 32–307(a), is to empower the SHPDA to ensure that the CON applicant performs according to the terms of the original proposal.[16] If a project is not completed according to plan before the

---

**14.** 22 DCMR § 4005.3 (1986) states: "If so specified, conditions shall continue to be valid after a project is completed or after a Certificate of Need is terminated."

**15.** Section 4005.2 directs the SHPDA to specify in the CON itself the expiration date, "if any," of every such condition.

**16.** D.C.Code § 32–307(a) (1988) provides in pertinent part:

The SHPDA shall issue a certificate of need valid for one year unless a shorter period is requested by an applicant. Certificate of need

shall be renewed for a period of one year, unless a shorter period is requested by the applicant, after a showing of substantial progress or a justification for the lack of progress (as defined in SHPDA regulations) on a project governed by a certificate of need.... The SHPDA shall adopt regulations to define the schedule of performance, including reporting thereof, criteria for evaluating compliance or non-compliance with the schedule, *and criteria for determining and reviewing major modifications after a certificate of need has been issued.* [Emphasis added.]

CON expires, the burden is on the applicant to apply for a new CON. The purpose of the regulation at issue here, however, is quite different. This regulation enables the SHPDA to attain its statutory goal of "effective and equitable health planning and regulation" by making sure that a health facility keeps its commitments. We see no inconsistency between the regulation and the basic purposes of the statute, *see K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988), and thus we agree with the trial court that the regulation is valid under D.C.Code § 32–316 (1988).

DCHA's argument relies on the fact that the Act authorizes the SHPDA to issue a CON for no more than one year. It reasons that because the CON is valid for a finite period of time, the SHPDA should not set potentially "perpetual" conditions on the subject matter of the CON. In our view, however, the imposition of conditions is entirely consistent with the general purpose of the CON Act, as set forth in D.C. Code § 32–301. Furthermore, it is certainly consistent with the requirement that notice be given before the proposed closing of a health facility, D.C.Code § 32–303(f), and with the provision in D.C.Code § 32–307(a) that "[t]he SHPDA shall adopt regulations to define ... criteria for determining and reviewing major modifications after a certificate of need has been issued."

DCHA's argument, reduced to its essence, would have the CON process extend only as far as the expiration of the CON itself or the realization of the CON's purpose. Were we to agree with DCHA, it would be virtually impossible for the SHPDA to "promote effective and equitable health planning and regulation of new institutional health services and capital expenditures...." D.C.Code § 32–301. After one year, a health facility could make a unilateral decision to alter the purpose or use of either a medical service unit or its equipment, and the SHPDA could do nothing about it. Such a state of affairs would surely conflict with the stated goal of pro-moting "effective and equitable health planning and regulation."

DCHA also argues that "the CON process is not the proper means to impose perpetual conditions." We cannot agree. As the SHPDA explained in its "Basis and Purpose Statement":

> [R]estricting conditions to the period prior to project completion would seriously weaken the CON program. For example, adopted criteria and standards require that an applicant make certain types of major medical equipment available on an emergency basis 24 hours a day, seven days a week. If an applicant proposes such equipment but does not propose to make it available on an emergency basis whenever needed, the SHPDA could approve the equipment only if it imposed a condition requiring that the equipment be available at all times for emergencies. Such a condition inherently extends beyond the period of project completion. If the SHPDA could not impose such a continuing condition, the SHPDA would not be able to enforce its criteria and standards except by denial of applications outright. This could result in shortages of medical services, or at least delays in their becoming available. Thus the Department [of Human Services] determined that continuing conditions are in the public interest and are not precluded by any statutory or regulatory provision.

Because a CON is issued to address certain specific circumstances, it would make no sense to allow the applicant to change the purpose or terms of the subject matter of the CON as soon as the expenditure is made or the last brick of a new building is put in place. To allow unrestricted change at the whim of the applicant would be plainly inconsistent with the statute. Bearing in mind that D.C.Code § 32–316 allows the SHPDA to adopt "any ... regulation ... necessary to carry out the purposes of [the CON Act]," we find no infirmity in 22 DCMR § 4005.[17]

---

**17.** We also reject DCHA's contention that the legislative history of the statute shows that the Council intended to deny the SHPDA the au-thority to impose "perpetual" conditions. The substitution of general rulemaking authority for specific provisions in earlier drafts of the CON

## C. *The "Threshold Expenditures" Regulation*

Under the statute, a CON must be obtained for any capital expenditure greater than $600,000, D.C.Code §§ 32–302(3)(A)(iv), 32–303(a)(1) (1988), or for the acquisition of any major medical equipment with a value in excess of $400,000, D.C. Code §§ 32–302(3)(A)(iii), 32–302(11)(A), 32–303(a)(1) (1988). The third regulation at issue, however—22 DCMR § 4030, *supra* note 9—imposes a duty on health facilities to notify the SHPDA of capital expenditures of $100,000 or more for any construction activity requiring a District of Columbia permit, or for the acquisition of major medical equipment costing $100,000 or more. DCHA argues that "the purposes of the statute are expressly limited to promoting planning and regulation of services and capital expenditures for which a CON is required," and that the SHPDA therefore has no authority to issue this regulation. A corollary argument is that the $100,000 cutoff point is arbitrary and capricious. These contentions are without merit.

The main purpose of this particular regulation is to prevent the financing of projects in stages in order to avoid obtaining a CON. The record shows the SHPDA was aware that in the past at least one institution had avoided the CON process by fragmenting a project that would normally have required an expenditure in excess of $600,000. Because the SHPDA has a statutory duty to review projects requiring a CON, it is altogether reasonable for it to establish procedures which will prevent the basic purpose of the Act from being ignored. Indeed, the power to issue regulations designed to prevent the circumvention of an Act's purpose is part of the normal authority given to regulatory agencies. *See Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 370, 93 S.Ct. 1652, 1661, 36 L.Ed.2d 318 (1973) (general delegation of rulemaking authority to an agency is sufficient to empower the agency

"to counteract attempts to evade the purposes of a statute"); *Gemsco, Inc. v. Walling,* 324 U.S. 244, 255, 65 S.Ct. 605, 612, 89 L.Ed. 921 (1945) (when administrator is given authority to issue regulations "necessary to carry out" the purposes of the statute, "nothing short of express limitation or abuse of discretion in finding that the necessity exists should undermine the action taken to execute it").

We conclude that this regulation, like the previous one, comports with D.C.Code § 32–316, which authorizes the SHPDA "to adopt any other regulation necessary to carry out the purposes of [the CON Act]." If indeed the SHPDA allowed health facilities to develop projects which, when viewed as a whole, would require a CON, but when viewed in stages would not, then the SHPDA would not be doing its lawful duty. Furthermore, the reporting requirement is a rational exercise of the SHPDA's authority as an overseer of "effective and equitable health planning." *See* D.C.Code § 32–301 (1988).

While there is, to be sure, a considerable difference between the requirement to notify the SHPDA of expenditures in excess of $100,000 and the $600,000/$400,000 CON requirements, we are not persuaded that the regulation is arbitrary and capricious. The sum of $100,000 is a significant enough expenditure to justify allowing the SHPDA to monitor a specific project, yet there is no indication that the duty to report the expenditure is a particularly onerous one. In the absence of such a showing, and because the regulation serves reasonable goals, the SHPDA's discretion in choosing the cutoff point is entitled to a great deal of weight. If the means chosen are reasonable, courts generally defer to the judgment of the administrative agency. *Knebel v. Hein,* 429 U.S. 288, 296–297, 97 S.Ct. 549, 554–55, 50 L.Ed.2d 485 (1977); *Mourning, supra,* 411 U.S. at 371–372, 93 S.Ct. at 1661–62. We do so in this instance.

Act does not mean that the Council intended to deny the SHPDA authority to promulgate section 4005. On the contrary, it is entirely possible that the Council intended to give the SHPDA the broadest possible delegation of rulemaking

authority. The Council's failure to enact an earlier draft containing broader terms is of no significance. *See United States v. Wells Fargo Bank,* 485 U.S. 351, 358, 108 S.Ct. 1179, 1183, 99 L.Ed.2d 368 (1988).

The trial court's judgment holding 22 DCMR §§ 4005, 4030, and 4102 to be valid is accordingly

*Affirmed.*